J.S45043/14 & J.S45044/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

PNC BANK, NATIONAL ASSOCIATION,  :    IN THE SUPERIOR COURT OF
SUCCESSOR IN INTEREST TO NATIONAL :      PENNSYLVANIA
CITY BANK,  :
                :
          v.      :
                :
DONALD J. WILLIS AND  :
PATRICIA A. WILLIS,  :
                :
         Appellants  :    No. 235 EDA 2014

Appeal from the Order Entered November 19, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: 3251 June Term, 2013

PNC BANK, NATIONAL ASSOCIATION,  :    IN THE SUPERIOR COURT OF
SUCCESSOR IN INTEREST TO NATIONAL :      PENNSYLVANIA
CITY BANK,  :
                :
          v.      :
                :
WHISPERING MEADOWS, LLC,  :
                :
         Appellant  :    No. 282 EDA 2014

Appeal from the Order Entered November 19, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: 3250 June Term, 2013

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED DECEMBER 30, 2014**

      We dispose of these two appeals together, as they lie from identical

orders issued in the Philadelphia County Court of Common Pleas denying

---

[*] Former Justice specially assigned to the Superior Court.

petitions to strike or open confessed judgments obtained by the same Appellee, PNC Bank, National Association, Successor in Interest to National City Bank. The appellants at No. 235 EDA 2014 are Donald J. and Patricia A. Willis. The appellant at No. 282 EDA 2014 is Whispering Meadows, LLC, a limited liability company of which the Willises are members. We will use the appellation "Appellants" to refer to all three appellants.[1] Appellants have filed identical briefs and argue the trial court erred in: (1) holding they did not raise meritorious defenses to the confessed judgment; and (2) awarding the attorneys' fees to Appellee. We deny relief on the first issue but grant relief on the second. Accordingly, we vacate and remand for the calculation of attorneys' fees.

"On April 30, 2007, Donald and Patricia Willis, as the borrowers, executed a promissory note with National City Bank, as the lender, in the principal amount of $1,280,000[.]" Trial Ct. Op., 2/26/14, at 2. The Willises defaulted on the note. Am. & Restated Forbearance Agreement, 7/1/12, at 1, Ex. C to Appellee's Compl. in Confession of Judgment, 6/25/13.

> On July 1, 2012, [the Willises and Appellee] executed an "Amended and Restated Forbearance Agreement" that amended the payment terms of the promissory note and caused Whispering Meadows, LLC . . . to execute a

---

[1] Appellants were represented in the trial court proceedings and in the instant appeal by the same law office. Furthermore, the appellate briefs, trial court opinions, and filings in both cases are identical, and for ease of disposition we refer to them in the singular.

> guaranty and suretyship agreement whereby it became a
> guarantor and surety for the Willis[es'] obligations.

Trial Ct. Op. at 2 (citations to record omitted). The documents attached to the forbearance agreement set forth the outstanding balance as $613,233.23.[2] The new maturity date for the loan was one year later, June 30, 2013. Am. & Restated Forbearance Agreement, Exh. A at 1.

Appellants did not make any payments under the new agreement. On June 25, 2013, Appellee, as a successor in interest to National City Bank filed complaints in confession of judgment against both the Willises and Whispering Meadows, LLC for the alleged failure to make payments Appellee asserted it was owed $710,411.96, which included $63,715.94 in "attorneys' fees of 10%."[3]

> [The parties] agreed to extend the time to file petitions to strike off or open the judgment so that the parties could attempt to negotiate a settlement of their issues. Those discussions were unsuccessful, and [on September 26, 2013, Appellants] separately filed nearly identical motions to "Open and Strike Confessed Judgment."[4]

---

[2] This figure included: (1) a principal balance of $546,012.57; (2) interest due of $61,950.33; and (3) a late fee of $5,270.33. The interest rate was 5%.

[3] The total damages of $710,411.96 also included: (1) $546,012.57 of principal balance; (2) $91,146.89 of interest through the date of the filing of the complaint; (3) $9,536.56 late charges. Appellee's Compl. in Confession of Judgment, 6/25/13, at ¶ 7.

[4] Pennsylvania Rule of Civil Procedure 2959 governs petitions strike or open confessed judgment. Pa.R.C.P. 2959. "Pursuant to Pa.R.C.P. 2959(a)(3), a petition to strike or open a confessed judgment must be filed within thirty days of the date the judgment creditor filed written **notice of its**

Trial Ct. Op. at 2 (citations to record omitted).

Appellants' motions raised three defenses. First, they argued:

> [Appellee] has failed to properly calculate the amount outstanding on the **Promissory Note** and has failed to give [Appellants] proper credit for payments[.] Specifically, [Appellants] made two payments of $2,500 on March 30, 2011 and April 12, 2011.[5] [Appellee's] failure to credit these payments affects the principal balance, interest, and late charges in an amount that cannot be determined at this time because [Appellee] has thus far been unwilling to provide an accounting on how those amounts were calculated. Thus, it is indisputable that the confessed judgment is in an amount in excess to which [Appellee] could be entitled as a matter of law.

Appellants' Mot. to Open & Strike Confessed Judgment, 9/26/13, at ¶ 3

(emphasis added). Appellants' second defense was that Appellee

> acted in bad faith with the intent and effect of frustrating [Appellee's] ability to make payments on the **Promissory Note**. Specifically, [Appellee] lost two executed copies of the Forbearance Agreement; (2) . . . never provided [them] with a countersigned copy of the Forbearance Agreement; (3) . . . never provided [them] with a payment schedule; (4) . . . never provided [them] with a monthly payment amount; and (5) . . . never provided [them] with a location or address to which payments could be directed. [Appellants] requested the foregoing items on numerous occasions, but [Appellee] failed to address these requests. . . . As a result of [Appellee's] failure to provide the foregoing items, [Appellants] were effectively unable to make regular payments on the **Promissory Note**. The two payments [above] were made by [Appellant] Donald J.

---

execution." ***ESB Bank v. McDade***, 2 A.3d 1236, 1240 (Pa. Super. 2010) (emphasis added). Here, Appellee did not seek to execute the confessed judgments, and thus Rule 2959(a)(3) is not triggered. ***See id.***

[5] As we discuss ***infra***, the March and April 2011 payments predated the July 2012 execution of the amended forbearance agreement.

> Willis literally appearing at a local [branch of Appellee bank] and giving the checks to a local teller. It was clear to [Appellants] from these circumstances that their payments were not being properly credited, and the Complaint in Confession of Judgment . . . has confirmed that belief. Thus, as a result of [Appellee's] bad faith, **it was objectively unreasonable for [Appellants] to continue to make payments that they knew would not be properly credited to the Promissory Note.**

*Id.* at ¶ 2 (emphases added). Appellants' final defense was that the attorneys' fees of $63,715.96 "act[ed] as an unlawful penalty rather than a lawful liquidated damages provisions [sic]" and was "clearly unrelated to and disproportionate to the work actually performed," that of "filing . . . a three page Complaint in Confession of Judgment." *Id.* at ¶ 3.

On October 2, 2013, Appellee filed answers, asserting Appellants "failed to present the requisite evidence of a meritorious defense necessary to open a confessed judgment." *See* Trial Ct. Op. at 4. Appellee attached a transaction history for the account, which showed the March and April, 2011 payments were credited. Appellee further argued that Appellants offered no factual support for their allegation that it "frustrated [their] ability to make payments on the promissory note." *Id.*

> [Appellee] further argued "the other allegations asserted by [Appellants] are immaterial, as none of them [affected Appellants'] ability to make payments to [Appellee] when due." Finally, regarding the requested attorney's fees of 10%, [Appellee] asserted that they are consistent with Pennsylvania law, and this court did not need to specifically access their reasonableness as they were specifically authorized by the warrant of attorney [in the parties' forbearance agreement].

*Id.* at 4-5 (citations to record omitted).

On November 14, 2013, the trial court held oral argument. Appellee produced a transaction history of Appellants' account. Appellants conceded the two $2,500 payments were credited to their account. Appellee further argued that "throughout 2011, the Willis[es] continued to make payments on a monthly basis" and on December 13, 2011, "made a principal reduction payment of $732,625.23." *Id.* at 5 (quoting N.T., 11/14/13, at 7).

On November 18, 2013, the trial court entered two orders, denying each of Appellants' motions to strike or open the confessed judgments. This timely appeal followed.[6]

In their first issue, Appellants argue the trial court abused its discretion by failing to recognize their meritorious defense that Appellee acted in bad faith. Their sole argument is:

> The trial court was presented with uncontested evidence that [Appellee]: (1) two executed copies of the Forbearance Agreement [sic]; (2) provided [Appellants] with a countersigned copy of the Forbearance Agreement [sic]; (3) provided [Appellants] with a payment schedule [sic]; (4) never provided [Appellants] with a monthly payment amount; and, (5) provided [Appellants] with a location or address to which payments could be directed.

---

[6] Although the text of the orders state the date is November 18, 2013, the orders bear "filed" time-stamps of November 19th. The trial docket also indicated that notice of the orders was given on November 19th. Accordingly, Appellants' notices of appeal filed on December 19, 2013, were timely. *See* Pa.R.A.P. 302(a); Pa.R.C.P. 236(a)(2). The trial court did not order Appellants to file a Pa.R.A.P. 1925(b) statement; however the court issued an opinion.

- 6 -

[Appellants' Reproduced Record at] 47a-48a and 140a-141a. Appellants] requested the foregoing items on numerous occasions, but [Appellee] failed to address these requests. *Id.* Specifically, [Appellant] Donald J. Willis made numerous phone calls to Ms. Jean Mascia, [Appellee's] agent who negotiated the transaction, to have these issues addressed, but none of his calls were returned. *Id.*

The court below reasoned that [Appellants] should have continued to make payments—of an indeterminate amount and at an indeterminate location—on the blind faith that their payments were being properly credited. This effectively alleviates [Appellee] of its duty of good faith and fair dealing by allowing [Appellee] to interfere with and fail to cooperate with [Appellants'] attempts to perform under the contract by making payments.

Appellants' Brief at 8-9. We hold no relief is due.

This Court has stated:

"A petition to **strike** a judgment is a common law proceeding which operates as a demurrer to the record.["]

\* \* \*

[T]he petition to **strike** a confessed judgment must focus on any defects or irregularities appearing on the face of the record, as filed by the party in whose favor the warrant was given, which affect the validity of the judgment and entitle the petitioner to relief as a matter of law. . . .

In contrast, "if the truth of the factual averments contained in [the complaint in confession of judgment and attached exhibits] are disputed, then the remedy is by proceeding to **open** the judgment," not to strike it. A petition to strike a confessed judgment and a petition to open a confessed judgment are distinct remedies; they are not interchangeable. A petition to open a confessed judgment is an appeal to the equitable powers of the court. **Factual disputes by definition cannot be raised or addressed in a petition to strike off a confession of judgment**, because factual disputes force the court to

rely on matters outside the relevant record to decide the merits of the petition.

***Midwest Fin. Acceptance Corp. v. Lopez***, 78 A.3d 614, 622-23 (Pa. Super. 2013) (citations omitted) (emphases added).

In the instant matter, Appellants' motion to **strike** the confessed judgment did not aver any defects or irregularities appearing on the record. Accordingly, we agree with the trial court that Appellants' motions "were only petitioning to open the confessed judgments." ***See*** Trial Ct. Op. at 6. Thus, we affirm the denial of the requests to **strike** the confessed judgment. ***See id.*** We thus consider whether the trial court erred in denying the motion to **open** the confessed judgment.

We note the relevant standard for a ruling on a petition to open a confessed judgment: "A petition to open judgment is an appeal to the equitable powers of the court. As such it is committed to the sound discretion of the hearing court and will not be disturbed absent a manifest abuse of discretion." ***PNC Bank v. Kerr***, 802 A.2d 634, 638 (Pa. Super. 2002) (citation omitted).

"[A] court acting in equity should open a confessed judgment only when the petitioner 'acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to require submission of the issues to the jury.'" ***Id.*** (citation omitted).

> Pa.R.Civ.P. 2959(e) sets forth the standard by which a court determines whether a moving party has properly averred a meritorious defense. "**If evidence is produced**

which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment." Furthermore, the court must view the evidence presented in the light most favorable to the moving party, while rejecting contrary evidence of the nonmoving party. The petitioner need not produce evidence proving that if the judgment is opened, the petitioner will prevail. Moreover, we must accept as true the petitioner's evidence and all reasonable and proper inferences flowing therefrom.

*Liazis v. Kosta, Inc*., 618 A.2d 450, 453 (Pa. Super. 1992) (citations omitted and emphasis added). "Fundamentally, every contract imposes upon the parties a duty of good faith and fair dealing in the performance and enforcement of the contract." *Id.* at 454.

In the case *sub judice*, the trial court opined that Appellants failed to present sufficient evidence of a meritorious defense. We agree, and note Appellants did not produce **any** evidence, either by attachment to their motion[7] to open confessed judgment or by presentation at oral argument before the trial court.

With respect to Appellants' claim that Appellee lost and failed to provide executed copies of the forbearance agreement, we agree with the trial court that these two facts, even if true, "had nothing to do with [Appellants'] ability to make payments." *See* Trial Ct. Op. at 7.

With respect to Appellants' defense that Appellee failed to provide a

---

[7] The only exhibits attached to Appellants' motions to open confessed judgment were: (1) emails between the parties concerning their agreement to extend the time for Appellants to petition to open the judgment; (2) copies of two checks payable to Appellee, of $2,500 each, and bearing "deposited" stamps.

payment schedule, monthly payment amount, and payment address, we note the following. Appellants' motion to open confessed judgment averred that Donald Willis called Ms. Mascia, Appellee's representative, for the payment schedule, monthly amount, and payment address, "none of his calls were returned," and consequently, [the Willises] "were effectively unable to make regular payments on the **Promissory Note**." Appellants' Mot. to Open & Strike Confessed Judgment at ¶ 4 (emphasis added). Appellants concluded, "Thus, as a result of [Appellee's] bad faith, [including its alleged failure to credit the March and April 2011 payments,] it was objectively unreasonable . . . to continue to make payments that they knew would not be properly credited to the **Promissory Note**." *Id.* (emphasis added).

A careful review of this argument reveals Appellants' argument was that because two payments were not properly credited under the **promissory note** and Appellants were unable to obtain payment information, it was unreasonable for them make payments under the subsequently executed **forbearance agreement**. Appellants provided no evidence, nor even an assertion, that despite the lack of a payment schedule, monthly payment amount, and payment address for the **promissory note**, and the fact that they ultimately defaulted under the promissory note, they subsequently attempted to obtain the above information after they executed the **forbearance agreement**. The trial

court noted:

> Given the undisputed fact that [Appellants] successfully made payments to [Appellee] on the account in the past (and even when they asserted the payments were not being credited), we agreed it was absurd for [Appellants] to now claim [Appellee's] conduct somehow prevented them from doing so **after** the forbearance agreement was executed . . . .  No doubt that is why [Appellants] carefully alleged only the hollow accusation that they were "effectively" unable to make regular payments on the promissory note, not that they were actually precluded from doing so.[ ]

Trial Ct. Op. at 7 (emphasis added).

Furthermore, the trial court reasoned:

> [T]here is a level of disingenuousness in [Appellants'] claiming bad faith on [Appellee's] part for allegedly not providing . . . a monthly payment amount after they entered into the forbearance agreement when thereafter [Appellants] had an equal obligation [sic] to make payment, but failed to make **any** payment on the account.  In addition to explicitly stating payments were due "on the last day of each consecutive calendar month" until the June 30, 2013 maturity date (which is essentially a payment schedule, something [Appellants] also averred they were never provided with in bad faith), Exhibit A to the forbearance agreement includes the interest rate and payment terms for the loan going forward.  This court is hard pressed to believe that if [Appellants] really were not being told [the monthly payment amount], they could not have attempted to calculate the expected payment (that appears to be approximately $6,900 a month) or at least make some kind of payment on the account, which in all certainty would have been properly credited to the account like all the other payments they made.  Of course, **there is no evidence [Appellants] attempted to make a payment of any kind after the forbearance agreement was entered into, but were refused**.  . . .

*Id.* at 7-8 n.1 (emphases added).

On appeal, Appellants ignore the above analyses. They likewise ignore the trial court's observation that at oral argument: (1) they conceded that the March and April 2011 payments were credited to their account; and (2) Appellee averred the Willises continued to make monthly payments "throughout 2011" and "made a principal reduction payment of $732,625.23" on December 13, 2011. *See* Trial Ct. Op. at 5; N.T. at 4, 6-7. At oral argument, Appellee contended such payments indicated Appellants' knowledge of where to make payments, as well as the fact that they had, prior to executing the forbearance agreement, previously made payments. N.T. at 7. In response, Appellants: (1) reiterated the five instances of alleged bad faith on the part of Appellee; and (2) then reasoned that the transaction history corroborated their claims: the lack of "a concession of monthly payment[s]" and the different amounts paid "tend to show [Appellants] didn't even know what [they were] supposed to be paying because of the bank's actions." *Id.* at 9-10.

In light of all the foregoing, including their argument before the trial court, Appellants have not persuaded this Court that the trial court abused its discretion in finding they did not allege meritorious defenses. *See PNC Bank*, 802 A.2d at 638. Accordingly, we deny relief on their first issue.

Appellants' second claim on appeal is that the court abused its discretion in rejecting their defense as to the attorneys' fees. As stated above, Appellee's complaint in confessed judgment demanded 10%

attorneys' fees in the amount of $63,715.94. Appellants present two arguments, which we address *seriatim*. First, they assert that the "attorneys' fee awards . . . had no relationship to the work actually performed by [Appellee's] attorney, and therefore, violated the express terms of the Forbearance Agreement, which specifically provides that 'the amount of attorneys' fees that [Appellee] may recover . . . shall not exceed the actual attorneys' fees incurred.'" Appellants' Brief at 9-10. They assert that the trial court improperly overlooked this provision of the forbearance agreement. Appellants further aver, without any citation to the record, that Appellee "admitted that those fees bore no relationship whatsoever to the work actually performed by [its] counsel." **See id.** at 10. They reason that the attorneys' fees thus "acted as an unlawful penalty rather than a lawful liquidated damages provision." **Id.** We find no relief is due.

In **Dollar Bank v. Northwood Cheese Co.**, 637 A.2d 309 (Pa. Super. 1994), the trial court refused to open a confessed judgment to determine the reasonableness of counsel fees. **Id.** at 314. On appeal, the borrower "assert[ed] that counsel fees awarded in accordance with the fifteen percent attorney's commission specified in the warrant of attorney [were] excessive." **Id.** This Court set forth relevant Pennsylvania authority:

> If a confessed judgment includes an item not authorized by the warrant, the judgment is void in its entirety and must be stricken. However, if the judgment as entered is for items clearly within the judgment note, but excessive in amount, the court will modify the judgment and cause a proper judgment to be entered. If the judgment was

> entered for an amount which was grossly excessive, the judgment must be stricken in its entirety.

*Id.* (citations omitted).  We then reasoned:

> Here, it is clear that attorney's fees in the amount of fifteen percent were specifically authorized by the warrant of attorney.  [The borrowers] claim that the amount of attorneys' fees is excessive, but they provide no citation to any evidence of record to this effect, and similarly do not make any argument as to why the fees are claimed to be excessive.  We note that a voluminous record accompanies the instant case.  In light of the fact that the warrant of attorney permits the fee to which [the borrowers] object, and in the absence of any specific argument concerning the alleged excessiveness of the fee, we find this argument meritless.

*Id.*

   *Rait P'ship, L.P. v. E Pointe Props. I*, 957 A.2d 1275 (Pa. Super. 2008), relied on *Dollar Bank*.  *Id.* at 1279.  In that case, the borrowers argued "that the trial court erred in refusing to strike off or open that part of the judgment that included 'an attorney's collection commission' of $450,000."  *Id.*  This Court disagreed:

> [T]his Court has previously approved the inclusion of similar collection commission provisions in contracts.  *See: Dollar Bank*[,637 A.2d at 314] (attorney's fee provision of fifteen percent enforceable where it was "specifically authorized by the warrant of attorney").  Here, there is no dispute that the Forbearance Agreement specifically provided for [the lender] to include as part of the confessed judgment "an attorney's collection commission of fifteen percent (15%) of the aggregate amount of the foregoing sums." . . .

*Id.*  Furthermore, in a footnote, this Court stated:

- 14 -

> We are not persuaded by [the borrower's] argument that the decision of this Court in **PNC Bank v. Bolus**, [655 A.2d 997 (Pa.Super. 1995)], compels a different result. In that case, this Court approved a trial court's finding that the inclusion of an attorney's commission of $70,647.77 on a confessed judgment was "unreasonable." However, the provision at issue in that case specifically called for the imposition of a "reasonable" fee, thus justifying the trial court's inquiry into the reasonableness of the fee. Here, however, there is no similar provision, merely the automatic imposition of a "commission" of fifteen percent taxable as a cost attributable to [the borrower's] default. . . .

*Id.* at 1279 n.3.

In the instant case, the forbearance agreement included the following clause pertaining to attorneys' fees:

> The Borrower hereby reaffirms and empowers any attorney of any court of record, after he occurrence of any Event of Default hereunder, to appear for the Borrower and, without complaint filed, confess judgment . . . against the Borrower in favor of the Bank . . . for the entire principal balance of the Note, all accrued interest and all other amounts due hereunder, together with costs of suit and **an attorney's commission of the greater of 10% of such principal and interest or $1,000 added as reasonable attorneys' fee**, and for doing so, the Note or a copy verified by affidavit shall be a sufficient warrant. . . . Notwithstanding the attorney's commission provided for in this paragraph (which is included in the warrant for purposes of establishing a sum certain), **the amount of attorneys' fees that the Bank may recover from the Borrower shall not exceed the actual attorneys' fees incurred by the Bank.**

Am. & Restated Forbearance Agreement at ¶ 10 (emphases added).

The trial court found Appellants' claim failed as a matter of law. Citing

**Rait P'ship, L.P.**, the trial court noted the Superior Court "has previously

approved of the inclusion of similar collection commission provisions in contracts." Trial Ct. Op. at 8. The trial court also held that it "need not assess the reasonableness of such a commission where the" contract explicitly provides for the commission and does not specifically call for a "reasonable' fee." *Id.* The court reasoned: "Here, the requested attorney's commission of 10% appeared in four separate places in the contracts between the parties and did not call on the court to inquire into the reasonableness of the commission." *Id.*

We agree with the court's reasoning. The forbearance agreement provided for "an attorney's commission of the greater of 10% of such principal and interest **or** $1,000 added as a reasonable attorney's fee." Am. & Restated Forbearance Agreement at ¶ 10 (emphasis added). Although the term "reasonable" appears, it modifies the $1,000 alternative. However, the agreement provided for either 10% of principal and interest **or** $1,000, whichever was greater. In this case, the 10% figure was greater and thus controlled. That clause did not invoke a court inquiry into the reasonableness of attorney's fees.

Appellants' second argument is that that the forbearance agreement limited an award of attorney's fees to "actual attorneys' fees" incurred by Appellee. We agree with this interpretation of the contract. *See* Am. & Restated Forbearance Agreement at ¶ 10. The trial court included the following footnote in its opinion:

> While the [forbearance agreement] provisions . . . allowed [Appellee] to establish a sum certain and confess judgment in the amount of $63,715.94 for attorney's fees, the court would note the guarantee and forbearance agreements will only allow [Appellee] to . . . recover . . . the actual attorney's fees it incurs, which **may end up being less than $63,000** in the absence of further litigation.

Trial Ct. Op. at 8 n.2 (citing Am. & Restated Forbearance Agreement at ¶ 10) (emphasis added).

On appeal, Appellants respond:

> The problem with [the trial court's] analysis is that the confessed judgments act as **final** [**judgments.** Appellee] can collect $63,715.94 in attorney's fees with impunity [sic], and if [Appellants] attempt to argue [Appellee] actually expended less, then surely [Appellee] will fall back on the doctrine of *res judicata*. In other words, the only way for the trial court have given [sic] "actual attorney's fees" provision any hope of being enforced was to open the confessed judgment and require [Appellee] to establish its actual attorney's fees. Having failed to do so was an abuse of discretion which should be overturned.

Appellants' Brief at 11-12. We determine this argument has merit.

The trial court's footnote indicates that the final sum of Appellee's attorney's fees was not yet calculated or determined, and could be less than the amount demanded in its complaint. Trial Ct. Op. at 8 n.2. None of Appellee's filings, including its complaint, includes documentation showing incurrence of $63,715.94 of attorneys' fees. Our review of the record likewise reveals no explanation for the court's reference to a $63,000 figure. As Appellants point out, the confessed judgments will act as final judgments against them. Because the trial court has indicated the final sum of

attorney's fees requested may not be calculated, and may be less than what was demanded, we agree with Appellants that the confessed judgments should be opened to determine this discrete issue. Accordingly, we vacate the court's orders denying Appellants' motions to open the confessed judgments and remand for the court to determine only the appropriate award of attorneys' fees.

Orders vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2014